PER CURIAM.
¶1 This is Jesus Gonzalez's second appeal from his convictions for first-degree reckless homicide and second-degree recklessly endangering safety. Both convictions were entered following a jury trial. In this appeal, Gonzalez argues that the circuit court erroneously denied without a hearing his postconviction motion alleging ineffective assistance of both his trial counsel and his postconviction counsel.
¶2 We conclude that Gonzalez's postconviction motion alleges facts that entitle him to a Machner[1] hearing on only one of his allegations of ineffective assistance of counsel, namely, that his trial counsel was ineffective for advising him not to testify at trial and that postconviction counsel was ineffective for not raising that issue in his first appeal. Accordingly, we reverse and remand to the circuit court for an evidentiary hearing on Gonzalez's allegation that trial counsel was ineffective for advising him not to testify at trial and that postconviction counsel was ineffective for not raising that issue in his first appeal.
BACKGROUND
¶3 We summarized the basic factual background of the incident leading to this appeal in State v. Gonzalez , No. 2015AP784, unpublished slip op. (WI App Mar. 8, 2016):
On May 9, 2010, Gonzalez shot two men. One victim, J.C., survived and was rendered paraplegic. The other victim, D.J., died as a result of the gunshot wounds. After shooting the victims, Gonzalez called 911 and reported that two individuals tried to assault him and that he shot them. No weapons were found on either victim or in the vehicle. Gonzalez had no injuries, and there was no evidence that he had been involved in a struggle or that he had been attacked. Gonzalez admitted to shooting both men and was positively identified by the surviving victim.
Gonzalez was charged with first-degree intentional homicide and attempted first-degree intentional homicide and was tried by a jury[.]
Id. , ¶¶3-4.
¶4 At the jury trial, Gonzalez argued that he had shot D.J. and J.C. in self-defense. Gonzalez based his self-defense argument on the 911 call he had made following the shooting, the recording of the 911 call that was played for the jury, and the transcript of the 911 call that was admitted into evidence. Gonzalez did not testify.
¶5 The jury found Gonzalez guilty of first-degree reckless homicide and first-degree reckless injury, both as lesser included offenses of the charged crimes. Subsequently, the parties informed the circuit court that the jury had been incorrectly instructed that first-degree reckless injury is a lesser included offense of attempted first-degree intentional homicide. Pursuant to an agreement between the parties, the court vacated the jury's conviction for first-degree reckless injury, and Gonzalez pled no contest to a charge of second-degree recklessly endangering safety.
¶6 Gonzalez retained new counsel and filed a postconviction motion for a new trial under WIS. STAT. § 809.30 (2017-18).[2] The circuit court denied the motion. Gonzalez appealed, arguing that the court erred by striking a juror at the close of trial and by allowing the jury to take notes during closing arguments. This court affirmed. See Gonzalez , No. 2015AP784.
¶7 Gonzalez, proceeding pro se , filed the present, second postconviction motion under WIS. STAT. § 974.06. We will refer to the second motion as "the § 974.06 motion" to distinguish it from Gonzalez's first postconviction motion. In his § 974.06 motion Gonzalez alleges that he received ineffective assistance of counsel at trial in multiple respects, and that he received ineffective assistance of postconviction counsel when his postconviction counsel failed to raise the ineffective assistance of counsel issue during the direct appeal. The circuit court denied the motion without an evidentiary hearing. Gonzalez appeals.
DISCUSSION
¶8 In his motion, Gonzalez alleges that his trial counsel was ineffective in the following ways: (1) advising him not to testify at trial; (2) failing to call certain defense witnesses; (3) failing to make certain arguments concerning the physical evidence presented at trial; and (4) failing "to use an expert." Gonzalez also alleges that his postconviction counsel was ineffective for failing to raise these allegations in his first appeal. Gonzalez argues that the circuit court erred in rejecting his motion without a hearing.
¶9 In the sections that follow, we first set out the law relating to Gonzalez's allegations of ineffective assistance of trial counsel. We then explain the standard that governs postconviction motions made under WIS. STAT. § 974.06 that raise different grounds for relief from those addressed during a prior appeal. We next address each of Gonzalez's allegations of ineffective assistance in turn. As we explain, we conclude that Gonzalez has shown that he is entitled to a hearing on his first allegation of ineffective assistance of trial and postconviction counsel, but he has not met his burden with respect to his other allegations. Accordingly, we remand for a hearing on Gonzalez's first allegation of ineffective assistance only.
I. Law Relating to Ineffective Assistance of Counsel Claims
¶10 Our supreme court has summarized the ineffective assistance of counsel standards as follows:
Whether a defendant was denied effective assistance of counsel is a mixed question of law and fact. The factual circumstances of the case and trial counsel's conduct and strategy are findings of fact, which will not be overturned unless clearly erroneous; whether counsel's conduct constitutes ineffective assistance is a question of law, which we review de novo. To demonstrate that counsel's assistance was ineffective, the defendant must establish that counsel's performance was deficient and that the deficient performance was prejudicial. If the defendant fails to satisfy either prong, we need not consider the other.
Whether trial counsel performed deficiently is a question of law we review de novo. To establish that counsel's performance was deficient, the defendant must show that it fell below "an objective standard of reasonableness." In general, there is a strong presumption that trial counsel's conduct "falls within the wide range of reasonable professional assistance." Additionally, "[c]ounsel's decisions in choosing a trial strategy are to be given great deference."
Whether any deficient performance was prejudicial is also a question of law we review de novo. To establish that deficient performance was prejudicial, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."
State v. Breitzman , 2017 WI 100, ¶¶37-39, 378 Wis. 2d 431, 904 N.W.2d 93 (citations omitted and italics added).
¶11 To prevail on a claim of ineffective assistance of counsel, a defendant must present the testimony of trial counsel at a Machner hearing. See Machner , 92 Wis. 2d 797. However, not every postconviction motion alleging ineffective assistance of counsel requires a Machner hearing. State v. Allen , 2004 WI 106, ¶10, 274 Wis. 2d 568, 682 N.W.2d 433. The standard for whether a defendant is entitled to a Machner hearing is summarized as follows:
Whether a defendant's postconviction motion alleges sufficient facts to entitle the defendant to a hearing for the relief requested is a mixed standard of review. First, we determine whether the motion on its face alleges sufficient material facts that, if true, would entitle the defendant to relief. This is a question of law that we review de novo. If the motion raises such facts, the circuit court must hold an evidentiary hearing. However, if the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing.
Allen , 274 Wis. 2d 568, ¶9 (citations omitted and italics added). To provide nonconclusory allegations, a postconviction motion must present the "who, what, where, when, why, and how" with sufficient particularity for the circuit court to meaningfully assess the claim of ineffective assistance. Id. , ¶23. Further, a circuit court may not deny a motion for a hearing based on the proposition that the allegations "seem to be questionable in their believability," because credibility "is best resolved by live testimony." Id. , ¶12 n.6 (citation omitted).
II. Law Relating to § 974.06 Motions
¶12 Where, as here, a defendant alleges ineffective assistance of trial counsel in a motion under WIS. STAT. § 974.06, without having first raised the issue in a prior postconviction motion or appeal, an additional procedural bar must be surmounted. Generally, "without a sufficient reason, a movant may not bring a claim in a § 974.06 motion if it 'could have been raised in a previously filed sec. 974.02 motion and/or on direct appeal.' " State v. Romero-Georgana , 2014 WI 83, ¶34, 360 Wis. 2d 522, 849 N.W.2d 668 (citing State v. Escalona-Naranjo , 185 Wis. 2d 168, 185, 517 N.W.2d 157 (1994) ).
¶13 Ineffective assistance of postconviction counsel may constitute a "sufficient reason" for not previously raising an issue in a prior postconviction motion or appeal. Romero-Georgana , 360 Wis. 2d 522, ¶36 ; State ex rel. Rothering v. McCaughtry , 205 Wis. 2d 675, 682, 556 N.W.2d 136 (Ct. App. 1996). To show that postconviction counsel was ineffective, a defendant must show that postconviction counsel performed deficiently and that the deficient performance prejudiced the defendant. Romero-Georgana , 360 Wis. 2d 522, ¶¶39-41. A defendant who alleges that postconviction counsel was ineffective for failing to raise certain issues must show that "a particular nonfrivolous issue was clearly stronger than issues that counsel did present." Id. , ¶¶45-46 (citation omitted).
¶14 "Whether a WIS. STAT. § 974.06 motion alleges a sufficient reason for failing to bring available claims earlier is a question of law subject to de novo review. Similarly, whether a § 974.06 motion alleges sufficient facts to require a hearing is a question of law that this court reviews de novo. " Id. , ¶30 (citations omitted and italics added).
III. Ineffective Assistance of Counsel Allegation One: Advice Not to Testify at Trial
¶15 Gonzalez alleges that his trial counsel was ineffective for advising him not to testify at trial. Gonzalez alleges that trial counsel performed deficiently by inaccurately informing him that, if he did not testify, the State could not disprove his self-defense argument, and that he was prejudiced by counsel's advice not to testify because his testimony was "absolutely critical and necessary" to his self-defense argument. The State asserts that Gonzalez's allegations are conclusory and, therefore, the postconviction court properly denied his motion without a hearing.
¶16 As we explain, we conclude that, taking the allegations in the postconviction motion as true, Gonzalez has shown that he is entitled to a Machner hearing on the alleged ineffective assistance of trial counsel for advising him not to testify at trial. We first provide additional background concerning the evidence and argument presented at trial. We then review the allegations in Gonzalez's motion as to what trial counsel advised him and what testimony Gonzalez would have given but for trial counsel's advice.
A. Additional Background
¶17 We briefly summarize the pertinent trial evidence and argument bearing on Gonzalez's self-defense theory. At trial, the evidence established that prior to the shooting, D.J. and J.C. had been drinking at a bar located within one block of Gonzalez's house. After the shooting, J.C. was found lying on the ground in the bar's parking lot, and D.J. was found near his vehicle several blocks away from the bar. The parties stipulated that D.J. had been in the vehicle when he was shot.
¶18 J.C. was the sole eyewitness to the shooting who testified at trial. J.C. testified that, as he and D.J. left the bar, he decided to walk to a friend's house nearby, while D.J. decided to drive. J.C. testified that as he reached the edge of the bar parking lot, he encountered Gonzalez walking towards him. J.C. testified that, from ten to fifteen feet away, Gonzalez pulled out a pistol and told J.C. to "get the F-back." J.C. testified that after he stepped back, the next thing he remembered was lying on the ground with a gunshot wound. J.C. also testified that as he sat up, he saw D.J.'s vehicle pull out of the bar parking lot and drive away.
¶19 The State presented the 911 call that Gonzalez made after the shooting, which provided the basis for Gonzalez's self-defense theory. In the 911 call, Gonzalez stated, "I just had two individuals try to assault me when I was going outside to move my car." He also stated, "I just had two individuals try to assault me on ... the corner of my street." In addition, he stated that he was armed, that he saw one of the assailants in a vehicle, that he "shot out the window" of the vehicle, and that he "might have hit [them] both."
¶20 The police officers who responded to the 911 call testified that Gonzalez cooperated with the police, was not combative or argumentative, and did not attempt to hide the gun involved in the shooting.
¶21 Gonzalez's car was 144 feet from the scene of the shooting, located in the opposite direction from the bar relative to Gonzalez's house.
¶22 Seven bullet casings were recovered in the bar parking lot. No casings were recovered near D.J. and his vehicle. There were multiple bullet holes in the sides of D.J.'s vehicle, the windows on the passenger side had been shot out, and two bullets were embedded in the side doors of the vehicle. Based on the bullet holes in the vehicle, an officer testified that the shooter was "to the side of the" vehicle when the shots were fired, not in front.
¶23 Medical examiners discovered three bullets in D.J.'s body and one bullet in J.C. Dr. Brian Peterson, who conducted the autopsy of D.J., testified that three bullets had entered D.J.'s right arm, moving from right to left. One of those bullets also penetrated D.J.'s torso, causing his death. Dr. Peterson testified that the trajectories of these bullets were consistent with D.J. being "perpendicular" to the source of the bullet. In addition, Dr. Peterson testified that a fourth bullet struck D.J. in the front of his leg, suggesting that there was a direct line between the front of D.J.'s leg and the gun, but that D.J.'s upper body could have been "perpendicular" to the gun even while the leg was facing the gun.
¶24 In his closing argument Gonzalez maintained that he had shot J.C. and D.J. in self-defense. Specifically, Gonzalez pointed to the 911 call, in which he had stated that two people had tried to assault him. Gonzalez asserted that the vehicle was a "weapon" and that the bullet wound on D.J.'s leg showed he had been facing the gun when that shot was fired. Gonzalez also pointed to the fact that D.J. had been drinking and was "behind the wheel of an operable" vehicle. Finally, Gonzalez argued that his cooperation with police showed he had no intent to kill anyone.
B. Whether Gonzalez's Allegations in the § 974.06 Motion Suffice to Entitle Him to a Hearing
¶25 In his § 974.06 motion Gonzalez alleges that trial counsel advised Gonzalez not to testify because "if the State was deprived of an opportunity to elicit testimony from [Gonzalez] on cross-examination, it could not possibly meet its burden to disprove that [Gonzalez] acted in self-defense." Gonzalez alleges, however, that without Gonzalez's testimony the jury heard "only one side of the story" that was contrary to his self-defense theory. Gonzalez alleges that trial counsel's advice, that the State could not disprove Gonzalez's self-defense theory if he did not testify, was incorrect because the State was able to present undisputed evidence that negated his self-defense theory. The motion alleges that but for counsel's advice, Gonzalez "absolutely would have" testified, as follows:
• he had gone outside to move his car after celebrating a family birthday;
• he took a gun with him because he customarily does so in the neighborhood at night;
• he walked towards his car but noticed that somebody was walking towards him from the bar in a "suspicious and alarming" way;
• the individual made "specific and direct threats" to him that "caused him to believe" he was in imminent danger;
• he drew his gun and chased the individual towards the bar parking lot;
• a second individual, who was in a vehicle, "revved the engine and drove the [vehicle] at a high rate of speed directly at" him;
• he moved to his left to avoid the vehicle and fired seven shots at the vehicle;
• "all seven rounds were fired in an instant and without pause" and "all seven rounds struck the vehicle."
¶26 Gonzalez alleges that his testimony was necessary to bolster the 911 call, which was the only evidence contesting the State's version of the events but which, without Gonzalez's testimony, appeared to be inconsistent with other evidence presented by the State.
¶27 We conclude that Gonzalez alleges sufficient facts that entitle him to a Machner hearing on his allegation that trial counsel provided ineffective assistance by advising him not to testify. He has alleged as follows: (1) the "who" is trial counsel; (2) the "what" is trial counsel's advice that he not testify; the "where" and "when" are before and during trial; (4) the "why" is because his proffered testimony as to the physical details of his self-defense theory was necessary to corroborate and explain the contents of the 911 call, which was cryptic and inconsistent with testimony by J.C. but consistent with some physical evidence presented by the State; and (5) the "how" is through his detailed account of what transpired before and during the shooting, which he would have testified to but for trial counsel's advice, to counter the testimony by the only other eyewitness to the shooting, J.C. Gonzalez has made these allegations of deficient performance and prejudice with sufficient particularity to allow the circuit court to meaningfully assess his claim. See Allen , 274 Wis. 2d 568, ¶¶21-22.
¶28 On the issue of prejudice, the State argues that Gonzalez cannot prove that he was prejudiced by trial counsel's advice not to testify. However, the State's argument is more properly directed at the evidence to be presented at the Machner hearing. The State does not persuasively argue that Gonzalez has failed to sufficiently allege facts that could support a showing of prejudice.
¶29 We conclude that Gonzalez has met his burden of alleging facts that, if true, entitle him to a Machner hearing on both the issues of deficiency and prejudice with respect to his allegation that trial counsel was ineffective in advising him not to testify. To be clear, this court is not concluding either that trial counsel was deficient or that Gonzalez suffered any prejudice. We are merely concluding that Gonzalez has alleged sufficient facts to entitle him to a Machner hearing.
IV. Ineffective Assistance of Counsel Allegation Two: Failure to Call Defense Witnesses
¶30 Gonzalez alleges that his trial counsel was ineffective for failing to call five different defense witnesses. According to his § 974.06 motion and attached affidavits, the five witnesses comprise certain of Gonzalez's friends and family who were in the house at the time of the shooting. Gonzalez alleges that these witnesses would have "testified very favorably and very strongly respecting [Gonzalez's] character"; that "they would have testified to his attitude and behavior during the course of the night in question"; and that "they ... would have been able to describe his behavior and demeanor [after the shooting]." In addition, Gonzalez attached affidavits from each of the five witnesses to his § 974.06 motion indicating the content of their testimony.
¶31 We conclude that Gonzalez's allegations concerning the five witnesses are conclusory and do not entitle him to a hearing. See Allen , 274 Wis. 2d 568, ¶9 (circuit court may deny a hearing "if the motion ... presents only conclusory allegations"). Although the affidavits attached to the motion provide specifics of what the witnesses would have testified, the motion falls short in explaining "why" the witnesses' testimony is important. See id. , ¶23 (the motion must allege "why" the evidence is important). The motion does not explain why Gonzalez's "character," his "attitude" on the night of the shooting, or his "demeanor" after the shooting are material to the issue of whether he acted in self-defense. That is, the motion does not explain "the reason the [evidence] is important." Id. , ¶24. As a result, the motion does not offer a reviewing court the opportunity to "meaningfully assess" whether the witnesses' testimony would affect the outcome of the trial. Id. , ¶23. Accordingly, Gonzalez has not met his burden with respect to this issue.
V. Ineffective Assistance of Counsel Allegation Three: Failure to Make Arguments Concerning the Physical Evidence
¶32 Gonzalez alleges that trial counsel was ineffective for failing to make certain arguments concerning the evidence presented at trial. In his § 974.06 motion Gonzalez couches this allegation in terms of trial counsel's "failure to perform proper cross-examinations and to retain a defense forensic expert witness." However, the crux of his allegation appears to be that trial counsel did not "demonstrate" that the physical evidence supported certain inferences beneficial to Gonzalez's case, and we, therefore, interpret his allegation to comprise complaints concerning trial counsel's failure to draw certain inferences from the evidence and present those inferences to the jury.
¶33 Regardless of how we classify Gonzalez's allegation, he only makes conclusory allegations concerning the inferences to be drawn from the trial evidence and, therefore, he has not shown that he is entitled to a hearing. In his § 974.06 motion, Gonzalez alleges that "the physical evidence completely supports" five separate conclusions: (1) "the vehicle operated by D.J. was driving directly at" Gonzalez; (2) Gonzalez "then moved to his left to try to get out of the way"; (3) "as he did this, [Gonzalez] fired [seven] shots in one sudden burst"; (4) "at the same time, D.J. swerved sharply to his left away from the shots"; and (5) "all seven shots struck the vehicle although at least two of them ricocheted and struck J.C."
¶34 Prominently lacking from Gonzalez's § 974.06 motion is any allegation regarding what physical evidence compels these conclusions or how Gonzalez would set about proving them. Instead, Gonzalez's motion merely asserts, without pointing to any evidence in the trial record, that "Gonzalez has [reviewed] the trial transcripts (and police reports) and has [determined] that the physical evidence completely supports the above [five] conclusions and that this evidence was improperly handled by [trial counsel]." Because Gonzalez's motion does not allege with any particularity the evidence that trial counsel mishandled or what additional evidence Gonzalez would present, the allegation is conclusory and does not entitle Gonzalez to a hearing on this issue. See Allen , 274 Wis. 2d 568, ¶9 (a motion that presents only conclusory allegations does not require a hearing).
VI. Ineffective Assistance of Counsel Claim Allegation Four: Failure to Use an Expert
¶35 Finally, Gonzalez alleges that trial counsel was ineffective for failing "to use an expert." This appears to be a variant of the allegation in his § 974.06 motion that trial counsel was ineffective for failing to make certain inferences and arguments concerning the physical evidence. In short, Gonzalez alleges that trial counsel should have obtained an expert "in order to understand" what the physical evidence showed and to "show that the [S]tate's case was fatally flawed."
¶36 Again, however, Gonzalez's § 974.06 motion does not allege what evidence an expert would have drawn upon to conclude that the State's case was "fatally flawed," nor does it propose a method by which Gonzalez could prove his allegation. In other words, Gonzalez's allegation is both speculative regarding what an expert would have testified to and conclusory. Thus, Gonzalez has not shown that he is entitled to a hearing on this issue. See Allen , 274 Wis. 2d 568, ¶9.
VII. Whether Gonzalez Has Sufficiently Alleged that Postconviction Counsel Was Ineffective
¶37 Gonzalez alleges that his postconviction counsel was ineffective because his claim of ineffective assistance of trial counsel is "clearly stronger" than the issues postconviction counsel raised during the direct appeal. In his first appeal, Gonzalez argued that the circuit court had erred by striking a juror at the close of trial and by allowing the jurors to take notes during closing arguments. Gonzalez , No. 2015AP784, ¶¶1-2. This court affirmed on the grounds that both errors were harmless, in part based on our determination that "there was no evidence to support" Gonzalez's self-defense theory. Id. , ¶¶32-35, 44. Given the allegations in Gonzalez's postconviction motion, that but for trial counsel's advice he would have provided such evidence in the form of the testimony detailed in his motion, on remand "[t]he [circuit] court can perform the necessary factfinding function and directly rule on the sufficiency of the reason," namely, ineffective assistance of postconviction counsel, for failing to raise that issue in Gonzalez's first appeal. See Romero-Georgana , 360 Wis. 2d 522, ¶36.
CONCLUSION
¶38 For the reasons stated above, we conclude that Gonzalez has sufficiently alleged that he is entitled to a hearing on his first allegation of ineffective assistance of trial counsel, which is that trial counsel was ineffective for advising Gonzalez not to testify at trial. However, we conclude that Gonzalez has not met his burden with respect to his remaining allegations as to trial counsel. Accordingly, we remand for an evidentiary hearing on Gonzalez's allegation that his trial counsel was ineffective for advising Gonzalez not to testify at trial and that postconviction counsel was ineffective for not raising that issue in his first appeal.
By the Court. -Order reversed and cause remanded for further proceedings.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

State v. Machner , 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.